WILL OF READ: NEACY, Respondent, vs. READ, Executrix,
Appellant.

*March 10—June 22, 1925.*

*Corporations: Stockholder making advances to pay corporation
   debt: Substitution of creditors: Agreement between stock-
   holders as to repayment: Consideration: Parol evidence.*

1. One of two stockholders in a corporation, who had guaranteed
   the indebtedness of the corporation to a bank, having advanced
   money to discharge it, the other, who later contracted to pay
   all corporation debts, is liable for such advances, either under
   his contract, as the corporation, having simply changed cred-
   itors, was still indebted for the amounts advanced, or on per-
   sonal account, if the advance was made to him and by him in
   turn to the corporation.  p. 339.
2. Where a written contract created an unambiguous obligation
   to pay the debts of a corporation, oral testimony opening up
   the transactions between the parties for years previous to the
   execution of the contract is inadmissible to explain or vary its
   terms.  p. 340.
3. An agreement by one stockholder to pay the debts of a cor-
   poration on the consideration that the other contracting party
   discharge debts owed by the corporation to him and also
   purchase stock in another corporation, is supported by ample
   consideration.  p. 341.

APPEAL from a judgment of the county court of Mil-
waukee county: JOHN C. KAREL, Judge.  *Reversed.*

*Thomas J. Neacy* filed a claim against the estate of Walter
Read, deceased.  The claim originally filed exceeded the
sum of $175,000 by a large amount, but since all in excess
of that amount has been amicably settled and since this
appeal involves only that amount, the balance of the claim
will not be stated.  It is undisputed that the amount of
$175,000 involved an indebtedness originally of the Beaver
Manufacturing Company to the First National Bank of
Milwaukee and the Marshall & Ilsley Bank of Milwaukee,
some of which notes were indorsed by Read and *Neacy*.
Read and *Neacy* had been engaged in joint business enter-
prises for nearly fifty years at the time of the decease of

Read, and for more than fifteen years prior thereto they had been owners of stock in equal parts in the Beaver Manufacturing Company and in the Filer & Stowell Company. Read had for a long time managed the Filer & Stowell Company. *Neacy* had for at least fifteen years managed the Beaver Manufacturing Company. The latter company had not been very prosperous, and had at the time the contract hereinafter set out was executed become heavily indebted to *Neacy,* to the Filer & Stowell Company, and to the banks mentioned. *Neacy* and Read had been negotiating for a long time for a division of their holdings, and it was finally agreed that Read should buy one half of the stock owned by *Neacy* in the Filer & Stowell Company and that he should assign to *Neacy* all his stock in the Beaver Manufacturing Company upon conditions as stated in the following contract:

"This agreement, made and entered into this 31st day of December, 1920, by and between *Thomas J. Neacy,* of Milwaukee, Wisconsin, and Walter Read, of Milwaukee, Wisconsin, witnesseth:

"That whereas, the parties hereto own, together with their respective wives, all of the capital stock of the Filer & Stowell Company and at the dissolution thereof did own all of the capital stock of the Beaver Manufacturing Company, each of which companies is a corporation organized and existing under the laws of the state of Wisconsin; and

"Whereas, the business of said Beaver Manufacturing Company has for several years been principally under the control and management of said *Thomas J. Neacy,* and it is claimed by said Walter Read the responsibility for losses of said Beaver Manufacturing Company during certain years during which it is claimed by him that said *Thomas J. Neacy* assumed complete control should be borne by said *Thomas J. Neacy;* and

"Whereas, on or about October 7, 1920, it was orally agreed by and between the parties hereto that as a part of a compromise of their respective claims in connection therewith all of the indebtedness of said Beaver Manufacturing Company over and above $437,083.96 (which amount it has

since been agreed should be increased $42,500) of its indebtedness to the Filer & Stowell Company should be borne and paid by said *Thomas J. Neacy* in consideration of the agreement on the part of said Walter Read to purchase from said *Thomas J. Neacy* certain of his shares of stock in the Filer & Stowell Company; and

"Whereas, pursuant to such oral agreement, said *Thomas J. Neacy* has since October 1, 1920, taken up certain of the indebtedness of said Beaver Manufacturing Company and now holds the same; and

"Whereas, said Beaver Manufacturing Company is now indebted to said *Thomas J. Neacy* in a sum exceeding $575,000; and

"Whereas, under and pursuant to such oral agreement, said *Thomas J. Neacy* did, on or about —— ——, transfer and convey to said Walter Read twelve hundred (1,200) shares of the capital stock of the Filer & Stowell Company held by said *Thomas J. Neacy* in part performance of such oral agreement, and in consideration of the advance by said Walter Read of various sums of money to said *Thomas J. Neacy* to enable him to take up certain indebtedness of said Beaver Manufacturing Company pursuant to such oral agreement, it being understood and agreed that the purchase price of such stock should be the sum of $208.33⅓ per share; and

"Whereas, said Beaver Manufacturing Company has been dissolved and all of its assets assigned pursuant to a declaration of a dividend in kind, subject to all of its indebtedness, and the stock of said Beaver Manufacturing Company surrendered by the respective stockholders thereof:

"Now, therefore, in consideration of the premises, and in consideration of the mutual agreements hereinafter contained, and in consideration of the purchase and sale pursuant to such oral agreement of said 1,200 shares of stock and the taking over by said *Thomas J. Neacy* of certain of the indebtedness of said Beaver Manufacturing Company:

"1. Said *Thomas J. Neacy* agrees to release and discharge all indebtedness of the said Beaver Manufacturing Company owing to or held by him, without regard to whether the same may heretofore have been guaranteed by him, or by him and said Walter Read, or in any other manner secured or wholly unsecured, and to assume and pay all of the

indebtedness of said Beaver Manufacturing Company, including that portion of its indebtedness to the Filer & Stowell Company over and above the sum of $479,283.96, as to which last named sum the parties hereto agree to procure a release by the Filer & Stowell Company, it being expressly understood that such agreement to pay such indebtedness is part of the consideration for the agreement on the part of said Walter Read, now partly executed, to purchase stock in the Filer & Stowell Company held by said *Thomas J. Neacy,* and which purchase so partly executed is hereby confirmed and ratified.

"2. Said Walter Read agrees to purchase of and from said *Thomas J. Neacy* such further shares of stock in the Filer & Stowell Company, including those shares now held by Mary C. Neacy, wife of said *Thomas J. Neacy,* as said *Thomas J. Neacy* may elect to offer at any time within five (5) years from the date hereof (provided, however, that the said Walter Read shall not be required hereunder to purchase more than nine hundred (900) shares on the basis of an outstanding stock of $1,200,000 in any year), at a price per share to be so fixed as to be the equivalent of $208.33⅓ per share on the basis of the stock outstanding on October 7, 1920, plus interest to be computed on sums equal to the purchase price of all stock theretofore held by said *Thomas J. Neacy* and Mary C. Neacy at the rate or rates of interest usually charged during such periods by the First Wisconsin National Bank of Milwaukee, Wisconsin, to its borrowers on notes secured otherwise than by the pledge of government bonds, it being the purpose of the parties hereto that notwithstanding any increases in the holdings of said *Thomas J. Neacy* and Mary C. Neacy, his wife, by the declaration of a stock dividend or stock dividends since October 7, 1920, or from time to time thereafter, the price to be paid shall be so fixed that if the total amount then held by him or her were sold at the price so fixed the total amount payable therefor, together with the amount or amounts theretofore paid, shall be equal to the sum which would have been paid had their entire holdings on said 7th day of October, 1920, been sold at the price of $208.33⅓ per share, payable in deferred payments with interest from time to time at the said prevailing rates of interest.

"In the event that said *Thomas J. Neacy* shall desire to make sale of any further shares of stock in said the Filer & Stowell Company to said Walter Read under this paragraph at any time, he shall give to said Walter Read thirty (30) days' notice of his desire so to do, stating the number of shares offered. . . .

"3. Said Walter Read agrees to and does hereby sell, assign, transfer, convey, and set over unto said *Thomas J. Neacy* all of his interest in the assets of said Beaver Manufacturing Company. . . .

"6. The agreements herein contained shall inure to the benefit of and be binding upon the parties mutually and their respective heirs, representatives, and assigns."

At the time this contract was entered into the indebtedness of $175,000 to the two banks had been paid to the banks in this way: Read paid some of it directly to the banks out of his own funds and the balance he advanced to *Neacy*, who paid the banks, and these payments were credited to *Neacy* upon the books of the Beaver Manufacturing Company. It appears in evidence that Read and *Neacy* were for a long time unable to agree upon a settlement, and finally they called in Mr. Hardgrove of the firm of Miller, Mack & Fairchild, and after some fifty to seventy-five conferences the above contract was executed by the parties. It is now claimed by *Neacy* that Read's estate still owes him $175,000, being the amount paid to the banks upon notes partly indorsed by Read and *Neacy*. It is the claim of the appellant that this sum of $175,000 advanced by Read should be credited to him upon his account for stock purchased from *Neacy*. If it should be so credited, then *Neacy's* claim fails. If it should not be so credited, then *Neacy* is entitled to recover either the amount of $175,000 or one half thereof, depending upon whether it was the intention of the parties that Read should pay the whole claim or only his one half. The county court found that the contract entered into was so indefinite and ambiguous when applied to the subject matter of settlement between the parties that oral testimony

was competent to explain it. The court took an accounting between the parties from an early date, and after testimony was introduced and exhibits of various kinds received it found that the amount of $175,000 was due to *Neacy* and entered judgment accordingly. From such judgment the executrix appealed.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *William C. Quarles* and *Howard T. Foulkes,* of counsel, all of Milwaukee, and oral argument by *Mr. William C. Quarles* and *Mr. Foulkes.*

*Paul D. Carpenter* of Milwaukee, for the respondent.

The following opinion was filed April 7, 1925:

VINJE, C. J.     At the time the contract of December 31, 1923, was made the following facts are admitted by both sides to have existed: Read and *Neacy* each owned one half the stock in the Filer & Stowell Company and in the Beaver Manufacturing Company; the Beaver Manufacturing Company was about to be dissolved; it was indebted to *Neacy* in the sum of $587,797.98 (called exceeding $575,000 in the agreement); it was indebted to the Filer & Stowell Company in a sum exceeding $479,283.96, which debt was to be released in the amount of the sum mentioned; it was indebted to Read or *Neacy* in the sum of $175,000 for money furnished by Read to pay notes to the bank, some of which were indorsed by Read and *Neacy.*

With these facts existing and in consideration of Read's assignment to *Neacy* of all his stock in the Beaver Manufacturing Company and the purchase of *Neacy's* stock in the Filer & Stowell Company at $208.33⅓ per share, *Neacy* agreed "to release and discharge all indebtedness of the said Beaver Manufacturing Company owing to or held by him, without regard to whether the same may heretofore have been guaranteed by him, or by him and said Walter Read, or in any other manner secured or wholly unsecured, and to assume and pay all of the indebtedness of said Beaver Manufacturing Company, including that portion of its indebtedness to the Filer & Stowell Company over and above

the sum of $479,283.96, as to which last named sum the parties hereto agree to procure a release by the Filer & Stowell Company, it being expressly understood that such agreement to pay such indebtedness is part of the consideration for the agreement on the part of said Walter Read, now partly executed, to purchase stock in the Filer & Stowell Company held by said *Thomas J. Neacy,* and which purchase so partly executed is hereby confirmed and ratified."

The question presented by the appeal is whether, under the facts existing, *Neacy,* through the contract above set out, agreed to pay Read the $175,000 he had advanced to take up the Beaver Manufacturing Company's debt to the banks or to allow him credit for said amount on his purchase of *Neacy's* stock. Either would be equivalent to a payment to Read of the amount.

The trial court found as a fact that the amount of $175,000 had been paid at the time the contract was entered into and hence was not covered by the agreement. This is also the claim of the respondent. From the reasoning used by the trial court and respondent, the only inference we can draw is that they regarded the debt as having been paid by the Beaver Manufacturing Company, whereas such is admittedly not the fact. It is a verity that *Neacy* received credit for the payment on the books of the Beaver Manufacturing Company. And whether he did or not, the fact is that the Beaver Manufacturing Company owed this amount either to Read or *Neacy.* If the sum of $175,000 was credited to *Neacy* on the books of the Beaver Manufacturing Company, as it was, then the Beaver Manufacturing Company owed *Neacy* this amount and *Neacy* owed it to Read, for he furnished the money. If it be said *Neacy* owed Read only one half, then the Beaver Manufacturing Company owed Read the other half, and *Neacy* must pay his own debt of one half, and by the contract he agreed to pay the Beaver Manufacturing Company's one half, so he must pay the whole to Read.

The money furnished to pay the notes to the bank was not a gift to any one. It was either to be repaid to Read

or credited to him if he owed it. But he did not owe it. The Beaver Manufacturing Company owed it. He should have been credited with it on the books of the Beaver Manufacturing Company, but the amount was credited to *Neacy*, and he became liable to Read for its repayment.

In his contract with Read *Neacy* agreed to pay all the debts of the Beaver Manufacturing Company. This debt is included in that promise. To do so he must pay the money to Read or give him credit for it on his stock-account purchase.

The simplest way to look at it is to ignore the bookkeeping of the Beaver Manufacturing Company and then we have this situation: The Beaver Manufacturing Company owed the banks $175,000. Read paid the banks this sum and the Beaver Manufacturing Company became indebted to him in said sum instead of to the banks; *Neacy* agreed to pay him this sum by agreeing to pay all the indebtedness of the Beaver Manufacturing Company.

The vital error in the trial court's conception of the case was that he found the notes had been paid in full. They had not been paid by the Beaver Manufacturing Company. It had simply changed its creditors from the banks to Read or *Neacy*. It still owed the whole amount.

It was no doubt owing to the conception that the notes were paid that the trial court concluded that, as applied to the existing facts, the contract was ambiguous and so permitted oral testimony to be given and the transactions between the parties to be opened up for years previous to the execution of the contract.

As we view it there is no ambiguity in the contract as applied to the existing facts. It fits them accurately and disposes of all controversies existing between the parties. In such a situation, oral testimony to explain or vary the terms of a written contract is inadmissible.

The contract speaks of the advance by Read to *Neacy* of certain sums to take up the indebtedness of the Beaver Manufacturing Company. In the contract *Neacy* agreed "to release and discharge all indebtedness of the said Beaver

Manufacturing Company owing to or held by him, without regard to whether the same may heretofore have been guaranteed by him, or by him and said Walter Read, or in any other manner secured or wholly unsecured." This fits the situation exactly as disclosed by the books of the Beaver Manufacturing Company. *Neacy* was credited with the amount of $175,000 on its books for payments made for the notes in question, some of which were indorsed by *Neacy* and Read and some of which were not. *Neacy,* as the contract recites, held the debt against the Beaver Manufacturing Company and he specifically agreed to pay it. Further on in the contract he agrees "to assume and pay all of the indebtedness of said Beaver Manufacturing Company," except a sum owed to the Filer & Stowell Company to be released and not material to the present inquiry.

The consideration for *Neacy's* agreement to pay the indebtedness of the Beaver Manufacturing Company is ample and is recited in the contract.

It follows from what has been said that the trial court erred in receiving testimony opening up the account between the parties and in finding that the estate of Read was indebted to *Neacy* in any sum whatsoever on this part of the claim filed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the claim here involved upon the merits.

A motion for a rehearing was denied, with $25 costs, on June 22, 1925.